IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| SONDRA LEE LANE, | |
| Plaintiff, | CIVIL ACTION NO.: 6:19-cv-102 |
| v. | |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | |

## **MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff contests the decision of Administrative Law Judge Craig R. Petersen ("the ALJ" or "ALJ Petersen"), denying her claim for Social Security Disability Insurance Benefits. Plaintiff urges the Court to reverse and remand the ALJ's decision for rehearing. Doc. 7 at 1–2. For the reasons which follow, I **RECOMMEND** the Court **REMAND** this case to the Commissioner under sentence four of 42 U.S.C. § 405(g). I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

### INTRODUCTION

In 2010, Plaintiff applied for both Disability Insurance Benefits ("DIB") and Medicare Part A benefits, based on her various medical and mental conditions. Plaintiff allegedly suffers from certain physical ailments (including chronic obstructive pulmonary disease, degenerative disc disease, and scoliosis) and at least one mental condition (depression). Since 2010, Plaintiff's claims have been rejected twice by the Commissioner.

This is the second time Plaintiff's claims have been before this Court. The first time, the Court determined the Commissioner's reasons for denying benefits were unclear. Specifically, the ALJ issued a decision in 2012 which was ambiguous about whether he was considering Plaintiff's Medicare Part A claim, her DIB claim, or both. To the extent the first ALJ did consider the DIB claim, his reasons for denying that claim were unclear. The Court noted Plaintiff probably made a mistake in even seeking benefits under Medicare Part A at the outset, and that error led to much of the confusion and ambiguity in the ALJ's 2012 decision. The Court remanded the case in 2016. In its remand instructions, the Court directed Plaintiff to expressly renew or withdraw her Medicare Part A claim. Apparently, that never happened. The Court also directed the Commissioner to clarify the reasons for the denial of Plaintiff's DIB claim. The ALJ conducted another hearing and issued another decision in 2018. That 2018 decision is now before the Court. Unfortunately, the Commissioner's reasons for denying benefits still remain unclear.

After the 2016 remand, Plaintiff amended her alleged onset date, which required the ALJ to conduct a new analysis of Plaintiff's DIB claim. Specifically, Plaintiff amended her onset date to a date before her date last insured ("DLI") for her DIB claim, which altered the eligibility analysis. This meant the ALJ needed to consider whether Plaintiff was disabled, within the meaning of Social Security Act, during the relevant time period. However, because Plaintiff never expressly withdrew her Medicare Part A claim, the ALJ referenced a separate DLI for that Medicare Part A claim—one that occurred almost five years after the DLI for the DIB claim. In doing so, the ALJ's 2018 decision is unclear about which claim he was considering at various points in his decision, making his reasons for denying Plaintiff's claims unclear as well. The 2018 decision is also unclear on whether the ALJ determined if Plaintiff had a nonsevere mental

impairment prior to her DIB DLI, and, if so, whether he considered that impairment in formulating Plaintiff's residual functional capacity. These ambiguities make it impossible to determine whether substantial evidence supports the ALJ's conclusions or whether he applied the correct legal standards. Therefore, remand is warranted.

**BACKGROUND**

Plaintiff applied for DIB and Medicare Part A benefits on October 18, 2010, initially alleging she became disabled on September 30, 2009. Doc. 5-5 at 2–5 (R. 167–70). Plaintiff's claims were denied initially and upon reconsideration. Doc. 5-4 at 2–5, 11–16 (R. 108–11, 117–22). After a hearing, Administrative Law Judge Morton J. Gold, Jr. issued an unfavorable decision on December 6, 2012. Doc. 5-12 at 17 (R. 658). The Appeals Council denied Plaintiff's request for review. Doc. 5-2 at 2–5 (R. 1–4). Plaintiff appealed the decision to this Court. Doc. 5-12 at 25–51 (R. 666–92).

On that appeal, the Commissioner argued Plaintiff's DIB claim had been properly denied because Plaintiff was not in an "insured status" (i.e., was not eligible for disability insurance benefits) at the time of her alleged onset date. Doc. 5-12 at 34–35 (R. 675–76). Specifically, the Commissioner argued Plaintiff's DLI for the DIB claim was June 30, 2009, but her onset date was not until September 30, 2009. Id. In response, Plaintiff raised a due process challenge, arguing: (1) her insured status was not raised prior to the appeal, (2) ALJ Gold did not cite lack of insured status as a basis for denial of the DIB claim, and, (3) if given the opportunity to develop evidence on remand, she could overcome any issue related to insured status. Id. at 32–37 (R. 673–78). While the Court acknowledged insured-status issues, the Court ultimately remanded the case to the agency because the basis for ALJ Gold's decision was unclear. Id. at 48 (R. 689). The Court explained ALJ Gold appeared to analyze Plaintiff's claim as a DIB claim

but labelled the claim as a Medicare Part A claim and cited authority related to a Medicare Part A claim.  Id. at 50 (R. 691).  The Court concluded affirming ALJ Gold's decision would require speculation and additional proceedings could remedy defects in the decision.  Id. at 49 (R. 690).  The Court provided the following instructions to the parties to guide the proceedings on remand: "[T]he Commissioner must clarify the basis for the SSA's denial of what obviously was a DIB claim (though [Plaintiff], perhaps inadvertently, also coupled it with a Medicare Part A claim, which she should expressly renew or withdraw upon remand)."  Id. at 50 (R. 691).

After remand, Plaintiff amended her alleged onset date to be June 12, 2009.  Doc. 5-16 at 55 (R. 855).  ALJ Craig R. Petersen held a second hearing on November 16, 2017.  Doc. 5-10 at 50 (R. 565).  During the hearing, the parties and the ALJ indicated they agreed Plaintiff's DLI for her DIB claim was June 30, 2009.  Doc. 5-11 at 5–7 (R. 591–93).  Vocational expert Kenneth L. Bennett testified at the hearing.  Doc. 5-11 at 38–45 (R. 624–31).  It does not appear Plaintiff ever expressly renewed or withdrew her Medicare Part A claim.[1]

In his 2018 decision, ALJ Petersen considered both the DIB claim and the Medicare Part A claim.  Doc. 5-10 at 53 (R. 568).  ALJ Petersen expressly noted that Plaintiff's DLI for her Medicare Part A claim was December 31, 2014.  Id. at 53 (R. 568).  ALJ Petersen found Plaintiff suffers from the following severe impairments: chronic obstructive pulmonary disease ("COPD"), degenerative disc disease, and scoliosis of the lumbar and thoracic spine.  Id.  The ALJ also noted Plaintiff was diagnosed with depression and a mood disorder.  Id. at 55, 62 (R. 570, 577).  Ultimately, the ALJ determined Plaintiff was not disabled and denied her claims.

---

[1] In her brief, Plaintiff states, "As the record does not contain documentation that she was hospitalized or received covered services during the period of time at issue for Medicare Part A eligibility (September 30, 2009 through December 31, 2014), the application for Medicare is irrelevant."  Doc. 13 at 2 n.1.  This is not the same as withdrawing the claim.  As explained below, the problems in this case arise, at least in part, because Plaintiff never took a position on the Medicare claim on remand.  As a result, Medicare-related issues crept back into the ALJ's decision, as they had before.

Id. at 66 (R. 581).  The Appeals Council again denied Plaintiff's request for review.  Id. at 33–35 (R. 548–50).

Plaintiff was 57 years old at the time of her alleged onset date of June 12, 2009.  Doc. 5-3 at 3 (R. 97).  Plaintiff has a high school diploma and medical assistant degree.  Doc. 5-6 at 15 (R. 206).  Plaintiff previously worked as a high school registrar, medical office assistant, and bookkeeper.  Id.

## DISCUSSION

### I.     The ALJ's Findings

Title II of the Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).  Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person meets the definition of disability.  20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity."  Id. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id.  If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments.  Id. at 140–41.  If

5

the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and is acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform her past relevant work. Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013). A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite [her] impairments." Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to make adjustments to other work in the national economy, considering her age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In this case, the ALJ followed this sequential process and determined Plaintiff did not engage in substantial gainful activity during the period between her alleged onset date, June 12, 2009, and the dates last insured. Doc. 5-10 at 53 (R. 568). At step two, the ALJ determined Plaintiff had the following combination of severe impairments: COPD, degenerative disc disease, and scoliosis of the lumbar and thoracic spine. Id. The ALJ appeared to conclude

6

Plaintiff suffered from nonsevere mental impairments—though, as explained below, this is one of the ambiguities in the ALJ's decision. Id. at 53–54 (R. 568–69). The ALJ stated Plaintiff's "alleged depression does not result in more than mild limitations . . . [because Plaintiff] has failed to carry her burden of proof with regard to severe impairments due to depression." Id. at 54 (R. 569). At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal the severity of one of the impairments listed in the regulations. Id.

The ALJ determined Plaintiff had the residual functional capacity to perform light work with the following limitations: she can push and pull up to 10 pounds occasionally, stand and walk up to 6 of 8 hours, and sit for up to 6 of 8 hours; she can occasionally climb stairs and ramps but not ladders or scaffolds; she can perform frequent balancing and occasional stooping, kneeling, crouching, and crawling; she can perform occasional overhead work and occasionally use foot controls; and she should have no concentrated exposure to heat, humidity, cold, gases, and fumes. Id. Despite his previous findings of nonsevere mental impairments, the ALJ found Plaintiff had "no limitations regarding concentration, persistence and pace, and no social deficits"—this is another ambiguity, or inconsistency, in the ALJ's decision. Id. At step four, the ALJ found Plaintiff could perform past skilled relevant work as a bookkeeper, medical secretary, registrar, and school secretary. Id. at 66 (R. 581). Thus, the ALJ did not move to step five and found Plaintiff not disabled.

## II.     Issues Presented

Plaintiff raises four enumerations of error. First, Plaintiff argues the ALJ's finding she could perform her past skilled work is not supported by substantial evidence. Second, Plaintiff argues the ALJ erred in rejecting Dr. Purvis' opinion as a treating physician. Third, Plaintiff

argues the ALJ erred by giving only little weight to Dr. Turner's opinion. Fourth, Plaintiff argues the ALJ erred by rejecting her testimony.

**III.    Standard of Review**

It is well-established judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence" and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct

legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision. <u>Wiggins v. Schweiker</u>, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* <u>Lane v. Astrue</u>, No. 8:11-CV-345, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

IV.   **Analysis**

Plaintiff's first enumeration of error is the ALJ's finding she could perform her past skilled work is not supported by substantial evidence. Doc. 13 at 10–15. In making this argument, Plaintiff focuses on an apparent contradiction in the ALJ's decision. At step two of the analysis, the ALJ determined Plaintiff had mild mental impairments in the areas of "understanding, remembering, or applying information; interacting with others; concentration, persistence, or maintaining pace; or, adapting or managing oneself." Doc. 5-10 at 54 (R. 569). However, in assessing Plaintiff's residual functional capacity at step four, the ALJ determined Plaintiff had "no limitations regarding concentration, persistence and pace, and no social defects." <u>Id.</u> Plaintiff argues the ALJ erred by failing to account for her mild mental impairments at step four, without providing sufficient reasons for doing so, and this failure is material because even mild mental impairments might have impacted the ALJ's conclusion Plaintiff could perform her past relevant work—namely, certain "skilled" positions.

Although perhaps not immediately apparent, the ALJ's continued consideration of Plaintiff's Medicare Part A claim complicates this issue. Upon remanding this case, this Court provided specific instructions to the Commissioner and Plaintiff. These instructions were not followed. The Court stated, "On remand, the Commissioner must clarify the basis for the SSA's denial of what obviously was a DIB claim (though [Plaintiff], perhaps inadvertently, also coupled it with a Medicare Part A claim, which she should expressly renew or withdraw upon

remand)." Doc. 5-12 at 50 (R. 691). This Court noted the substantial ambiguity surrounding Plaintiff's date last insured because the parties sometimes identified her DLI as June 30, 2009 (which turned out to be the DLI for the DIB claim) and other times as December 31, 2014 (the DLI for the Medicare claim). Id. at 33–34 (R. 674–75). Because the Court's instructions were not followed, the ALJ continued to discuss the two DLIs in the 2018 decision. To complicate matters further, the ALJ refers to the "date last insured" (singular) at certain points and the "dates last insured" (plural) at other times. Id. at 53–66 (R. 568–81).

The ALJ's analysis of Plaintiff's mental impairments is impossible to discern, at least in part, because of the ambiguity surrounding the two DLIs. In his step two analysis, the ALJ stated, "The undersigned finds claimant alleged depression does not result in more than mild limitations in understanding, remembering, or applying information; interacting with others; concentration, persistence, or maintaining pace; or, adapting or managing oneself." Id. at 54 (R. 569). This strongly indicates the ALJ concluded Plaintiff had some mental impairment—likely a nonsevere one—from onset to date and through her DLI. However, it is unclear whether that was the June 30, 2009 DLI for DIB or the December 31, 2014 DLI for Medicare. But when making the residual functional capacity finding at step four, the ALJ then contradictorily stated, "She has *no* limitations regarding concentration, persistence, and pace, and no social deficits." Id. (emphasis added). The ALJ did not specify how he accounted for Plaintiff's apparent nonsevere mental impairments that he identified at step two, if he did at all. Instead, the ALJ gave a lengthy description of each piece of evidence presented during the proceedings without clear analysis or findings. Id. at 54–65 (R. 569–80). In doing so, he points to evidence that might suggest the severity of Plaintiff's claimed symptoms is not supported by the evidence, suggesting that was the reason for finding no functional limitations. But the ALJ also suggests

10

Plaintiff might not have had any mental impairments during her insured status. See, e.g., Doc. 5-10 at 62 (R. 577) (discussing Dr. Tuner's opinion Plaintiff had mild limitations in occupational function but stating, "The undersigned notes Dr. Turner expressed his opinion of the claimant's level of functioning at the time of his evaluation in May of 2011, which is after her date last insured for eligibility for disability income benefits."). Thus, at step two, the ALJ determined (apparently) that Plaintiff had nonsevere mental impairments from her onset date. But then, at step four, the ALJ determined Plaintiff had no limitations as to concentration, persistence, and pace and no social deficits. It is unclear how the ALJ reached this conclusion. Perhaps the analysis hinged on Plaintiff's DIB DLI, but that is not clear. Alternatively, the analysis may have turned on the severity of Plaintiff's functional limitations, but that is not clear either.

Ultimately, the Commissioner still has not clarified his basis for denying Plaintiff's claim because the ALJ considered both the DIB claim and Medicare Part A claim simultaneously and did not analyze the claims separately. Although Plaintiff now acknowledges her Medicare claim is "irrelevant" due to a lack of reimbursable expenses, the ALJ's analyses of the DIB and Medicare claims are so intertwined the Court cannot conduct a meaningful review.

The continued consideration of the Medicare Part A claim is perplexing because the ALJ specifically discussed some of these issues at the hearing with the parties. Doc. 5-11 at 6–7 (R. 592–93). During their discussion, Plaintiff clarified her DLI was June 30, 2009. Id. at 6 (R. 592). The ALJ asked whether this was a Title II claim only, to which Plaintiff responded in the affirmative. Id. at 7 (R. 593). It is unclear why the ALJ did not note this discussion in his opinion and decided instead to analyze the Medicare claim alongside the DIB claim. Further confusing matters, the ALJ stated Plaintiff's alleged onset date was September 30, 2009, at the

11

end of his opinion, even though Plaintiff amended her onset date to June 12, 2009, after remand.[2] Doc. 5-10 at 66 (R. 581). The ALJ may not have considered the appropriate dates for each claim given these mistakes. Thus, the Court cannot determine whether the ALJ applied the correct legal standards or whether the ALJ's conclusions are supported by substantial evidence.

The ALJ's analysis is unclear, and this Court cannot "affirm simply because some rationale might have supported the ALJ's conclusion." Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984); see also Morrison v. Comm'r of Soc. Sec., 660 F. App'x 829, 834 (11th Cir. 2016) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review"). Based on the ALJ's analysis, the Court cannot determine how the ALJ reached his conclusions regarding Plaintiff's mental impairments. Accordingly, remand is necessary. Because I recommend remand of this matter to resolve the issues described above, I recommend the Court decline to address Plaintiff's remaining enumerations of error.

## CONCLUSION

For the reasons stated above, I **RECOMMEND** the Court **REMAND** this case to the Commissioner under sentence four of 42 U.S.C. § 405(g). This remand under sentence four would terminate this Court's jurisdiction over the matter. Therefore, I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal. As stated by this Court previously, the Commissioner must clarify its basis for denial on remand. Plaintiff must formally renew or withdraw her Medicare claim.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file

---

[2] Ordinarily, this onset date mistake could be assumed to be a scrivener's error. But given the ambiguity that has plagued this case, even that assumption is shaky.

timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); <u>Harrigan v. Metro Dade Police Dep't Station #4</u>, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  <u>Harrigan</u>, 2020 WL 6039905, at *4; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 26th day of February, 2021.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA